SHEELEY, Plaintiff in error, v. WIGGS *et al.*, Defendants in error.

*Constable—Jurisdiction.*—The County Court has no power to vacate the office of a constable, nor any general power to do such acts as shall cause his office to become vacant. Neither has it power, by virtue of the statute relating to constables, ( R. C. 1855, p. 346, § 3,) to require the constable to give a new bond, because the penalty in the bond previously given was, in the estimation of the court, insufficient. Where, therefore, the County Court, without a notice to show cause, made an order requiring the constable to give a new bond with a larger penalty than his original bond, and subsequently declared his office vacant upon his failure so to do, and a new constable was appointed by the justice of the township, who gave bond; *held,* that the acts of the County Court were void, and that the securities upon the original bond were liable for moneys collected by the constable upon executions after such acts. Although the court, at a subsequent term, revoked its order, and the constable gave an additional bond, the original bond was not discharged by virtue of 4th section of the statute.

*Error to Callaway Circuit Court.*

*Hockaday & Hayden,* for plaintiffs in error.

I. Admitting that the proceedings in the County Court

were in all respects legal and proper, the evidence showed that Minor was constable *de facto*. That from his election, in 1858, to the expiration of his term of office, in 1860, he was in the actual and notorious exercise of his office, and had never been ousted therefrom. The order of the County Court declaring the office vacant did not oust him from the office, which could be done only by *quo warranto*. "When an officer is sued for malfeasance in office, it is enough to show that he is an officer *de facto;* his not being so *de jure* is not an objection that can be made available to defeat, or in any manner affect, the interests of third persons." "If the law holds the officer liable, there is no principle on which his securities can be discharged." (State, to the use of Moutrey's administrator v. Muir, 20 Mo. 303; St. Louis County v. Sparks, 10 Mo. 117; 3 Johns. 431; 7 Johns. 549; Cowan & Hill's Notes, 555; 9 Wend. 17; 3 Scam. 483; 4 Tenn. 366; 1 Pick. 273; 4 Mass. 60; 7 Mass. 123; 11 Mass. 207; 15 Mass. 200; 13 Mass. 295; 24 Wend. 525; 6 Wend. 422; 9 Johnson, 135; 1 Hill, 674; 5 Hill, 616; 3 Littell, 458; 3 Littell, 316.)

II. But Minor, the constable, was not only an officer *de facto*, but an officer *de jure*, in the lawful, notorious and exclusive exercise of its duties; had been elected regularly, and had, in compliance with the law, given a bond, with the defendants as his securities, for the faithful discharge of such duties. It is urged, however, that the County Court divested him of his office, for that they did on the 6th day of February, 1860, in an ex parte proceeding, without any previous notice, order him to give a new bond in the sum of ten thousand dollars by 11 o'clock on the 8th day of February following, giving him, excluding the day on which the order was made, one entire day to give the new bond, and *duly served* a copy of the order upon him upon the day the order was made. He told them by his letter, carefully preserved among the records of the court, that he was not prepared to give a bond in the sum of ten thousand dollars upon so short a notice, to say nothing of the fact that no legal inquiry had been insti-

tuted, according to the usual forms of law, to discover whether the bond already given was not sufficient to cover executions "soon to come" to his hands. The office is thereupon declared vacant, and on the 11th day of February, 1860, an appointment was made to fill the vacancy. On the 21st day of February the court rescinded the order declaring the office vacant, and Minor filed an *additional* bond. He did not give additional security, but filed an *additional bond*, which meant simply a bond *in addition to the one already given*, so as to cover *the excess* of executions which might come to his hands, the evident intention being to *enlarge the penalty* by an additional bond, and not to substitute the new bond for the former bond and discharge the old bond. This appears the more evident from the fact that the old bond was in a penalty of five thousand dollars and the new bond in a like penalty, making in total the sum required, ten thousand dollars. To place any other construction upon the order would stultify the whole proceeding; because to substitute a new bond with the same penalty with the old bond, as there was no pretence that the securities on the old bond were not perfectly solvent, would not have attained the object which the County Court desired to arrive at, *i. e.* to so enlarge the penalty as to cover executions "soon to come" to the hands of the officer. If the object had been to discharge the old bond by taking the new, none of the proceedings show a conformity to either section of the statute upon which it is supposed the proceedings were based. (1 R. C., title Constables, § 3 & 4; 2 R. C., title Securities, § 23 & 24.) Both of these summary proceedings contemplate a case where the securities, or some one of them, in an official bond, have become non-resident, insolvent, or insufficient, and not to a case where the securities, being solvent and unobjectionable, the penalty of the bond is not large enough to cover anticipated liabilities which may possibly accrue. The penalty of the old bond was not large enough, the order says, to secure such amounts as were "soon" to come to the hands of the constable, and they did accept from him, on the 21st of Febru-

ary, a bond to cover the excess, not as a *new bond,* upon the filing and approval of which the old bond was to be discharged, and upon which the entire liability of the officer to the community should rest, but as an *additional* bond.   The statute under which the proceedings were had contemplated that notice should be served upon the constable before the day set for hearing, to show cause why he should not be required to give a new bond.   By a proceeding *inverso ordine* they first make the order and then notify him of what they had done, and give him, by the most favorable construction, one day to obey the order, or show cause to the contrary, thereby throwing the burden of proof upon him, to show that he *would not* soon receive executions to a greater amount than the penalty of the old bond.   Not being prepared either to prove a negative, or to give so large bond upon so short a notice, his office is declared vacant.   A judgment rendered against a party who has no notice of the proceeding is absolutely void.   (Anderson v. Brown, 9 Mo. 638; 7 Mo. 463.)   This principle applies to the order of February 6, requiring Minor to give a new bond.   The order of the 8th of February, to which it is pretended that Minor waived notice by his letter, amounts to nothing, because that order simply declares " the office vacant," a power which the County Court did not possess. The statute gave them no power to declare the *office vacant,* but that vacancy, by the express language of the statute, was simply a consequence which the law annexed to the default of the constable in failing to give a new bond when required by the order of the court to do so.   If in no other words, after Minor had written a letter waiving, either expressly or impliedly, the want of notice, and they had at that time ordered him to give a new bond upon a day in such order specified, if he had failed to do so, his office, by force of the positive language of the statute, would have been vacant.   This, however, is all based upon the assumption that some of the facts contemplated in the sections of the statute referred to, such as death, insolvency, removal from the State, &c., appeared to the court in order to give jurisdiction; it being a special

statutory proceeding, and of a summary character, the jurisdiction could not be enlarged so as to include a case like this, not within its purview by even the remotest implication. But, assuming that the court had jurisdiction at a special term of the court, and without notice to Minor, and without any fact appearing as to the sufficiency of the securities of the old bond, as mentioned in the statute, to require a new bond with a larger penalty; if the order was simply irregular, or *a portion* void for want of legal notice, they had power to rescind the order, and they had the power to accept a bond additional to that already given, which it is presumed would be good, independent of any proceedings under the sections referred to of the statute. (Jones v. State, 7 Mo. 85.) Minor never having surrendered his office, the rescission by the court of the order placed him in *statu quo*. And surely the fact whether he held the office legally, or whether W. S. George, the appointee, was entitled to it, could not be made the subject of inquiry in this proceeding. Sufficient to say that the defendants could, at any time, by a proper proceeding under the statute, have discharged themselves from liability, and it is not the fault of plaintiff that they have not done so.

*C. H. Hardin*, for defendants in error.

I. The County Court of Callaway county had the power, at the special term, to institute proceedings against Minor, constable, and he admitted it by raising no objection on the return of process. Nor can the plaintiff in this collateral proceeding maintain the objection that the court had not the power to act then and in the manner it did. The County Court, when in session, unless restrained by some positive enactment, would have the right to exercise any of its powers not dependent on the consent of another; and the exercise of powers dependent on such consent would be maintained where such consent is given, or, when not given, objection thereto is waived.

II. The sufficiency of the bond was a question alone for the consideration of the County Court, and their act must, from

the nature of the case, be final. And the office once made vacant by the legal exercise of the proper power, could not be supplied except in the manner provided by law. Hence the act of the court, at a subsequent and different term, rescinding the former order vacating the office of constable, and the subsequent acts of Minor as constable, cannot and do not affect the question. George was the legal appointee to office, and qualified, and gave bond, and obtained an approval thereof by the clerk, before the order of court rescinding the order vacating the office was made. Upon the facts here presented, the securities of Minor, defendants in error, were released, and liability for his acts could not be reimposed on them except by their own consent. (2 R. C 1855, p. 1458, § 23, 24, & 25.)

III. The court below committed no error in granting and refusing instructions, and in overruling plaintiff's motion for a new trial.

BATES, Judge, delivered the opinion of the court.

This is a proceeding against the securities of a constable, who claim that they have been discharged from liability on their bond by the means stated.

In August, 1838, James L. Minor was elected constable of Fulton township, in Callaway county, and the defendants became securities on his official bond. On the 6th day of February, 1860, the County Court of Callaway county made the following order:

"It appearing to the court that the bond of James L. Minor, constable of Fulton township, Callaway county, Mo., is insufficient, from the smallness of the penal sum in said bond, to cover and secure the amount of executions now in his hands, and sure to come to the hands of said constable; it is therefore ordered that said Minor, constable as aforesaid, be, and he is, required to give a new bond in the sum of ten thousand dollars; and it is further ordered, that said constable give said new bond by 11 o'clock A. M., on Wednesday next."

And on the 8th day of February, 1860, the County Court made the following order:

"The sheriff having returned the notice to James L., Minor, constable of Fulton township, in Callaway county, served, by delivering to said constable a copy of the same, on the 6th day of February, 1860; and the said Minor having failed to show cause why a new bond should not be given; and furthermore, the said Minor having failed to give a new bond, as required by the order of this court, but makes default thereof; it is therefore ordered and adjudged that the office of constable of Fulton township, in said county, in the State of Missouri, is vacant, and that the clerk notify the magistrates of said township of this order."

Afterwards the justices of the township appointed another person constable, who gave bond, which was approved by the court. At the next term of the County Court an order was made, rescinding the orders of the 6th and 8th of February, and Minor gave an additional bond in the penal sum of five thousand dollars, with other securities, which was approved by the County Court. Minor continued to act as constable until the expiration of the term for which he was originally elected. And the matters, on account of which this proceeding was instituted, took place after all the action of the County Court above stated.

The court below held, in effect, that the securities in the first bond were discharged from liability, by reason of the vacating of the office of Minor by the County Court, and the appointment of another constable in his place. That decision we are now called to review. The third section of the act concerning constables, R. C. of 1855, p. 346, provides that, "whenever any surety of a constable shall die, remove from the county in which he executed the bond, or become insolvent; or when, from any other cause, the County Court shall have reason to believe that the sureties to a constable's bond are likely to become, or have become, insufficient, the court shall require the constable, at a time to be appointed, to show cause why a new bond shall not be given; and, unless such

cause be shown, the constable shall be required, within a given time, to enter into a new bond; and, in default thereof, the office shall be vacant, which shall be filled as other vacancies." The fourth section provides that, "after the approval of such new bond by the court, the sureties of the former bond shall be discharged from all liabilities that may thereafter accrue."

The County Court has no power to vacate the office of a constable, and no general power to do such acts as shall cause his office to become vacant. The statute above quoted gives to the County Court the only power it possesses in the premises, and the law must be strictly pursued, in order to make the exercise of the power there granted effectual. The orders of the County Court, copied above, do not pursue the law. The law declares that the court shall require the constable to show cause why a new bond shall not be given. This was not done at all; but the first thing done by the court was to require the new bond, and that not for the reason that the sureties in the old bond were dead, removed, or insufficient, but because the penal sum named in the bond was too small. This order was unauthorized by the law, and void. The order of the 8th of February, declaring the office of the constable vacant, was also void, because the County Court has no power to make it. It might make orders which, if not obeyed by the constable, would create a vacancy, but has no power to judge of or declare the vacancy.

As the orders were nullities, the giving of the new bond by the constable was merely voluntary, and does not discharge the securities in the original bond.

The judgment of the court below is reversed, and cause remanded. Judges Bay and Dryden concur.